UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IGNACIO DIOGENES ARIAS,          )

          Petitioner       )

v.                     )       Civil Action No.
                     )       04cv10171-NG

THOMAS HODGSON,          )

          Respondent      )

### RESPONDENT'S REPLY TO PETITIONER'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS AND MOTION TO HOLD PROCEEDINGS IN ABEYANCE

Respondent[1] seeks leave of Court to file this Reply to Petitioner's Response to Respondent's Motion to Dismiss and Motion to Hold Proceedings in Abeyance ("Petitioner's Response").

**JURISDICTION**

I.   THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PETITIONER IS NOT IN CUSTODY.

As reported to the Court in respondent's filing on March 18, 2004, petitioner was released from respondent's custody. Because petitioner is no longer in custody, and no final removal order has been issued against him, this case is moot for lack of the custody required by 28 U.S.C. § 2241(c). See Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000) ("we can discern no principled

---

[1]  The responsive successor official of the Bureau of Immigration and Customs Enforcement ("ICE"), Department of Homeland Security, in the instant action is Field Office Director Bruce Chadbourne, of the ICE in Boston, Massachusetts. However, this respondent is not a "custodian" of petitioner, who is not in custody.

1

basis for adopting a different, more expansive meaning of the word 'custodian' in the immigration context as opposed to the prisoner context. Accordingly, we hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained."); Lefkowitz v. Fair, 816 F.2d 17 (1st Cir. 1987)("[f]ederal habeas review is not an academic exercise designed to solve puzzling legal questions. It is a means of emergency relief in straitened situations, a means which ought not to be energized needlessly once the emergency-- 'custody,' as we have defined it--abates. We cannot forget that 'the traditional meaning and purpose of habeas corpus [is] to effect release from illegal custody.'" (Citing Preiser v. Rodriguez, 411 U.S. 475, 486 n.7 (1973)).

Accordingly, because petitioner is not in custody as required by 28 U.S.C. § 2241(c), and is not subject to a final order of removal, the Court lacks subject matter jurisdiction and the case should be dismissed.

II.   PETITIONER'S 1996 DEPORTATION ORDER IS UNREVIEWABLE, UNDER FORMER 8 U.S.C.§ 1105a(c) BECAUSE PETITIONER DEPARTED THE UNITED STATES SUBSEQUENT TO THE ENTRY OF HIS DEPORTATION ORDER.

Petitioner's departure subsequent to the entry of his July 31, 1996, order of deportation effected the deportation of petitioner. 8 U.S.C. § 1101(g) ("any alien ordered deported or

2

removed (whether before or after the enactment of this Act) who
has left the United States, shall be considered to have been
deported or removed in pursuance of law, irrespective of the
source from which the expenses of his transportation were
defrayed or of the place to which he departed.").

Once an alien has departed the United States, his
deportation order may not be reviewed. Former 8 U.S.C. §
1105a(c)(1995);[2] Baez v. INS, 41 F.3d 19, 20 (1st Cir. 1994),
cert. denied 115 S. Ct. 2608 (1995) ("We conclude that the
statute's [8 U.S.C. § 1105a(c)] plain meaning must prevail, and,
therefore, an alien's departure from the United States, whether
voluntary or involuntary, deprives the federal courts of

---

[2]

"An order of deportation or of exclusion shall not be
reviewed by any court if the alien has not exhausted
the administrative remedies available as of right under
the immigration laws and regulations *or if he has
departed from the United States after the issuance of
the order*. Every petition for review or for habeas
corpus shall state whether the validity of the order
has been upheld in any prior judicial proceeding, and,
if so, the nature and date thereof, and the court in
which such proceeding took place. No petition for
review or for habeas corpus shall be entertained if the
validity of the order has been previously determined in
any civil or criminal proceeding, unless the petition
presents grounds which the court finds could not have
been presented in such prior proceeding, or the court
finds that the remedy provided by such prior proceeding
was inadequate or ineffective to test the validity of
the order."

8 U.S.C. § 1105a(c)(1995) (emphasis added).

3

jurisdiction to entertain challenges to an antecedent order of deportation.").

Petitioner appeals to the line of cases that relies upon Mendez v. INS, 563 F.2d 956 (9th Cir. 1997), although he does say the First Circuit has disagreed with this development of the law "generally". Petitioner's Response, p.2. In fact, however, the First Circuit has rejected Mendez outright. Baez v. INS, 41 F.3d 19, 23 (1st Cir. 1994), cert. denied 115 S. Ct. 2608 (1995) ("We reject the Mendez exception. Although Mendez itself presented a compelling case on its peculiar facts and the desire to afford relief is understandable on that plane, we believe the court's willingness to take liberties with the language of [immigration statute barring review] is mischievous and has produced bad law.[]") (footnote omitted).

Petitioner ignores the Baez holding while seeking to generate an exception to it consonant with the Mendez exception rejected by Baez in the first place. But "[t]o embellish section 1105a(c) as Mendez suggests is to import ambiguity into words that are as unambiguous as ordinary linguistic usage permits. That approach is unacceptable, for it mutes the clarion call that Congress has sounded, and, in the bargain, muffles the Court's string of recent 'plain meaning' cases." Baez v. INS, 41 F.3d at 24. In this important connection, the First Circuit observed that "[t]here is certainly no slack in the [8 U.S.C. § 1105a(c)]

4

command that the order 'shall not be reviewed by any court.'
Having set out this command, the statute contains no mention that
it is subject to any exceptions." Id.  The Baez court remarked
that "[w]hen Congress plainly marks a path, courts are seldom
free to leave it and roam at will in the surrounding veldt.
Section 1105a(c) falls within this general rule. Having found a
clear meaning in the unvarnished language of the statute, we are
duty bound to honor that meaning, not to alter it by applying a
judicial gloss." Baez v. INS, 41 F.3d 19, 24 (1st Cir. 1994),
cert. denied 115 S. Ct. 2608 (1995).

     Despite the exceptional clarity of the Baez holding that
post-departure review of deportation orders is unavailable,
petitioner says that Baez held out "the possibility" that an
exception might exist for extreme cases, one of which, not
surprisingly, petitioner says he has.  However, what Baez
actually said was: "[e]ven if we were to acknowledge that some
extreme situations, such as a knowingly unlawful deportation by
the INS for the specific purpose of shortstopping an alien's
right to review, might justify an exception to section 1105a(c)'s
jurisdictional bar, petitioner's claims are not of this stripe."
Baez v. INS, 41 F.3d at 25 (emphasis added).  The Baez court then
didn't even recognize that *any* "extreme situation" would be
cognizable as an exception to the "unvarnished language of the
statute [that] we are duty bound to honor"; rather only that "we

5

do not think that petitioner has alleged the type of extreme unfairness that <u>might</u> warrant overriding the plain language of the statute." <u>Id</u>. (emphasis added).

At any rate, even the hypothetical example of an extreme situation voiced by <u>Baez</u> -- "a knowingly unlawful deportation by the INS for the specific purpose of shortstopping an alien's right to review"-- bears no remote resemblance to petitioner's claim. Petitioner asserts implicitly that because <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001) invalidated the Attorney General's decision in <u>Matter of Soriano</u>, 21 I&N Dec. 516, 533 (Op. Att'y Gen. Feb. 21, 1997)(1996 WL 426888) *after* petitioner self-deported and then illegally re-entered the United States, petitioner's case is so compelling that this Court should recognize it as the first exception to the First Circuit's bedrock <u>Baez</u> holding. Petitioner's Response, pp.2-3.

An obvious first problem with his position is that at the time of the Immigration Judge's July 31, 1996,[3] deportation order, the Attorney General's February 21, 1997, <u>Matter of Soriano</u> decision, <u>supra</u>, had not yet even been issued, <u>see</u> <u>infra</u>, EXHAUSTION, Part III, and therefore it was open to petitioner to

_____

[3] Respondent has erroneously given the date of the Immigration Judge's deportation order as August 30, 1996, on page 5 of its Return and Memorandum of Law In Support of Motion to Dismiss. All other references in that filing are to the correct, July 31, 1996, date. Respondent regrets any confusion caused by this error.

argue administratively and then judicially if necessary for the same result reached in Ins v. St. Cyr, supra.

Petitioner's observation that "[f]rom the moment that the Attorney General vacated the BIA's decision, any appeal to the BIA would have been futile, as the BIA has no authority to overrule the Attorney General", Petitioner's Response, p.3, is therefore beside the point: At the time of the Immigration Judge's July 31, 1996, deportation order, the Attorney General's February 21, 1997, rejection of the BIA's Matter of Soriano decision had not yet even occurred. Indeed, at the time of petitioner's July 31, 1996, deportation order, the BIA's own Matter of Soriano, 21 I&N Dec. 516 (BIA 1996) (1996 WL 426888),[4] held that former Immigration and Nationality Act ("INA") 212(c) relief actually remained *available* to aliens like petitioner who had already filed a section 212(c) application for relief.[5] But the petitioner failed to appeal to the BIA the Immigration Judge's contrary determination in his case.

More fundamentally, "it has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule." Teague v. Lane, 489 U.S. 288, 308, (1989). Accordingly, the Supreme Court's

---

[4] The two decisions are at the same citation, with the attorney General's later, February 27, 1997, decision beginning at p. 533.
[5] Petitioner's application for section 212(c) relief was pending before the Immigration Judge in ongoing hearings for at least

ultimate determination as to the availability of a discretionary

relief provision of law years after petitioner's deportation does

not even establish that petitioner's deportation order "clearly

unlawful", Petitioner's Response, p.3 n.1, much less provide a

basis for ignoring the plain holding in Baez.[6]

In Digrado v. Ashcroft, 184 F.Supp.2d 227 (N.D.N.Y. 2002) a

habeas petitioner who had been deported upon the basis of an

order applying the rule of section 212(c) ineligibility later

invalidated by the Supreme Court's St. Cyr decision re-entered

the United States illegally, like petitioner, and claimed on

habeas petition that his prior deportation was unlawful in light

of St. Cyr, like petitioner.  The district court, however, held

_____

several years prior to the controversial April 24, 1996,
amendment broadly restricting the availability of that relief.
[6] Petitioner's extended argument regarding the untimeliness
determination in the denial of his motion to reopen is simply
whistling past the graveyard.  He failed to inform the
Immigration Judge and the BIA -- and for that matter this Court
in the instant Petition -- that he had departed the United States
subsequent to the entry of his July 31, 1996, deportation order.
It is particularly disingenuous for petitioner now to be heard to
complain now about a decision on a motion to reopen for which,
upon the true undisputed facts, the Immigration Judge BIA lacked
jurisdiction to rule at all.  See 8 C.F.R. § 1003.23(b)(1)(motion
to reopen may not be filed subsequent to departure from the
United States); cf. Navarro-Miranda v. Ashcroft, 330 F.3d 672,
676 (5th Cir. 2003)("The BIA's construction of § [1003].2(d) as
overriding § 3.2(a) such that the Board lacks jurisdiction to
reopen the removal proceedings of a deported alien is a
reasonable agency interpretation of the regulations in question.
The Board's conclusion that the case is moot is consistent with
the well- established principle that "a final civil judgment
entered under a given rule of law may withstand subsequent
judicial change in that rule." Teague v. Lane, 489 U.S. 288, 308,

8

that "[a]lthough DiGrado is correct in contending that hindsight reveals that both Immigration Judge Meisner and the BIA, in light of St. Cyr, incorrectly retroactively applied certain provisions of the AEDPA and IIRIRA to his detriment this fact does not somehow render the doctrine of res judicata inapplicable in the present action." Digrado v. Ashcroft, 184 F.Supp.2d at 233. "Since the issue of his deportability has already been fully and fairly litigated, the doctrine of res judicata precludes DiGrado from relitigating this claim in the present habeas corpus action."). Id. at 234. See generally Teague v. Lane, supra.

Accordingly, since petitioner's departure from the United States puts his deportation order squarely within the review bar of former 8 U.S.C. § 1105a(c)(1995),[7] "the statute's [8 U.S.C. §

---

109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). We therefore deny Navarro's petition for review of his motion to reopen.").

[7]
"An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available as of right under the immigration laws and regulations *or if he has departed from the United States after the issuance of the order*. Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld in any prior judicial proceeding, and, if so, the nature and date thereof, and the court in which such proceeding took place. No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order."

1105a(c)] plain meaning must prevail, and, therefore, an alien's departure from the United States, whether voluntary or involuntary, deprives the federal courts of jurisdiction to entertain challenges to an antecedent order of deportation."). Baez v. INS, 41 F.3d 19, 20 (1st Cir. 1994), cert. denied 115 S. Ct. 2608 (1995).

The Court should therefore dismiss this action for lack of subject matter jurisdiction.

**EXHAUSTION**

III.   PETITIONER'S 1996 DEPORTATION ORDER IS UNREVIEWABLE UNDER
       FORMER 8 U.S.C.§ 1105a(c) BECAUSE PETITIONER FAILED TO
       EXHAUST HIS ADMINISTRATIVE REMEDIES IN APPEALING THAT ORDER
       TO THE BIA.

Petitioner defends against the statutory exhaustion bar by asserting that any appeal by him of his deportation order "would have been futile, as the BIA has no authority to overrule the Attorney General." Petitioner's Response, p.3. However, at the time of Immigration Judge's July 31, 1996, deportation order, the Attorney General's decision in Matter of Soriano, 21 I&N Dec. 516, 533 (Op. Att'y Gen. Feb. 21, 1997)(1996 WL 426888) was some six months in the future, and was not issued until February 21, 1997.

---

8 U.S.C. § 1105a(c)(1995) (emphasis added).

Indeed, during the window for petitioner to file an appeal[8] the BIA's Matter of Soriano, 21 I&N Dec. 516 (BIA 1996) (1996 WL 426888)[9] decision held that section 212(c) was *available*[10] to aliens like petitioner who had 212(c) applications pending on April 24, 1996.[11] The Attorney General's intermediate vacation of the BIA's Matter of Soriano, pending her review of it, did not occur until September 12, 1996, and at any rate did no more than return the state of the administrative law to the pre-Matter of Soriano open forum.[12] Therefore, not only was petitioner's appeal from the July 31, 1996, deportation order clearly not foreclosed, but petitioner had the BIA's published Matter of Soriano a fortiori as support for an appeal from the Immigration Judge's contrary determination on section 212(c) eligibility.

---

[8] See 8 C.F.R. § 3.38(a)(1996)(10 day appeal period for filing at the BIA).

[9] The two decisions are at the same citation, with the attorney General's later, February 27, 1997, decision beginning at p. 533.

[10] The BIA's Matter of Soriano, supra, issued June 27, 1996, and in effect prior to the Attorney General's vacation of it on September 12, 1996, and overruling of it on February 27, 1997, held that Congress did not intend for the relief-eliminating provisions of the 1996 amendments to apply retroactively to relief applications pending on the date of enactment of those amendments.

[11] Petitioner's application for section 212(c) relief was pending before the Immigration Judge in ongoing hearings for at least several years prior to the controversial April 24, 1996, amendment broadly restricting the availability of that relief.

[12] See 73 NO. 35 Interpreter Releases 1213 (reporting text of Attorney General Reno's September 12, 1996, vacation of the BIA's Matter of Soriano, pending "further determination" of the Attorney General).

And although petitioner complains he couldn't bring a purely Constitutional challenge to the BIA on administrative appeal, he didn't need to inasmuch as the BIA's Matter of Soriano, 21 I&N Dec. 516 (BIA 1996) (1996 WL 426888)[13] decision itself held that section 212(c) was available to aliens like petitioner who had 212(c) applications pending on April 24, 1996.  See e.g. Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988) ("[w]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").  Therefore this is not a case "where resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor," Sousa v. I.N.S., 226 F.3d 28, 32 (1st Cir. 2000).

Finally, petitioner asserts that Sousa v. INS, 226 F.3d 28 (1st Cir. 2000) "left open the question" of whether a failure to raise a "clearly meritorious claim" could be forgiven "in a case that threatened a miscarriage of justice."  Petitioner's Response, P.4.  However, Sousa also said that although if "writing on a clean slate" it would be very "tempting" to treat

---

[13] The BIA's Matter of Soriano, supra, issued June 27, 1996, and in effect prior to the Attorney General's vacation of it on September 12, 1996, and overruling of it on February 27, 1997, held that Congress did not intend for the relief-eliminating

Sousa's procedural forfeit of his claim as something less than a
jurisdictional bar, and that although the common law exhaustion
requirement is a fairly flexible rule, "[t]he Supreme Court
regards exhaustion requirements imposed by statute as more rigid
than the common law doctrine" and so "[w]hatever our own views,
we are bound by precedent to apply the INA exhaustion requirement
in a more draconian fashion." Sousa v. INS, 226 F.3d at 31.

     At any rate, there is no threat of miscarriage of justice
where petitioner, represented by prior counsel in deportation
proceedings, simply failed to pursue his administrative remedies
by appealing his deportation order to the BIA where published BIA
precedent at the time -- albeit later reversed by the Attorney
General -- gave substantial support for such an appeal.  See 8
C.F.R. § 3.1(g)(1996)("[e]xcept as they may be modified or
overruled by the Board or the Attorney General, decision of the
Board shall be binding on all officers and employees of the
[former Immigration and Naturalization] Service or Immigration
Judges . . .").   Rather, it is simply a clear instance of
failure to exhaust remedies falling squarely within the compass
of former INA section 106(c), former 8 U.S.C. § 1105a(c),

     Accordingly, the Court lacks subject matter jurisdiction to
review petitioner's 1996 deportation order under former 8 U.S.C.
§ 1105a(c) because he departed the United States subsequent to

───────────────────────────────────────

provisions of the 1996 amendments to apply to relief applications

13

the entry of that order. Former section 106(c) INA, former 8
U.S.C. § 1105a(c) ("[a]n order of deportation or exclusion shall
not be reviewed by any court if the alien has not exhausted the
administrative remedies available to him as of right under the
immigration laws and regulations"); Sousa v. INS, 226 F.3d 28, 31
(1st Cir. 2000)("most circuits, including this one, have
described section 106(c) as a jurisdictional bar where an issue
sought to be raised in court was not raised in the agency.").

### OPPOSITION TO MOTION TO HOLD PROCEEDINGS IN ABEYANCE

Petitioner's arguments for holding the instant petition in
abeyance beg the question that there is any subject matter
jurisdiction in the case to begin with. For the reasons set out
above and in respondent's previous filings, viz., that petitioner
has departed the United States after being ordered deported, that
he failed to exhaust his administrative remedies, and that he is
not in custody, there is no habeas corpus jurisdiction for this
case.

Respondent therefore opposes the motion for abeyance.
Should petitioner ever again become subject to a final
administrative order of removal, he may seek judicial review or
habeas corpus review of that order to the extent that such review
may be available to him at that time. However, nothing is gained
by keeping this case open on the Court's docket for at least

---

pending on the date of enactment of those amendments.

14

easily another year or more while petitioner navigates the administrative removal process before the Immigration Judge, and, if there unsuccessful, the BIA.

## CONCLUSION

For all the reasons set out above and in respondent's previous filings, the Court should dismiss the petition without prejudice, and deny all other relief sought.


Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  _____
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114
(617) 565-2415


## CERTIFICATE OF SERVICE

I hereby certify that I caused true copy of the above document to be served upon counsel for petitioner by mail on May 28, 2004.

_____
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114

15